

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 202 736 8270
CPHILLIPS@SIDLEY.COM

February 27, 2023

Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *In re TransCare Corp.*, Nos. 21-2547 & 21-2576 (argued December 16, 2022)

Dear Ms. Wolfe:

Plaintiff-Appellee Salvatore LaMonica, acting in his capacity as the Chapter 7 trustee for the estates of TransCare Corporation, respectfully submits this supplemental letter brief pursuant to the Court's post-argument order dated January 24, 2023.

To respond to the Court's questions, a few clarifications of the record are necessary. Two of the TransCare subsidiaries that were included in the subject collateral were associated with Certificates of Need ("CONs"): TC Hudson Valley Ambulance and TC Ambulance Corp. SA30 n.15; SA53. The trustee later sold these CONs for a total of $3.2 million—$1.9 million for the Hudson Valley CON and $1.3 million for the TC Ambulance Corp. CON. SA53; JA1976. When the trustee's damages expert calculated the liquidation value of Transcendence to be $5.7 million, he included the $1.9 million Hudson Valley CON but not the $1.3 million TC Ambulance Corp. CON. JA1976. The reason he excluded the second CON was that Lynn Tilton's projections for Transcendence, which the damages expert relied upon for his assessment, included only the paratransit, Hudson Valley, and Pennsylvania divisions. JA1969. Tilton left TC Ambulance Corp.—which was associated with the Bronx 911/Montefiore 911 division—out of her projections because that division had lost its contracts and was effectively worthless by the time of the foreclosure. SA28; JA1969 n.70. In short, the CON associated with TC Ambulance Corp. was not included in the liquidation value for Transcendence because that division was not part of the projections for the operating value of Transcendence. The bankruptcy court ultimately concluded that neither of the CONs was actually included in the subject collateral; accordingly, it declined to make any deductions from the damages awards for the CONs. SA30 n.15; SA67; SA77.

The judgments below, including the damages awards, should be affirmed. First, Tilton, Patriarch Partners Agency Services, LLC, Transcendence Transit, Inc., and Transcendence Transit

# SIDLEY

Page 2

II, Inc. (collectively, Tilton and the Patriarch entities) both waived and forfeited any argument that the damages awards should be offset by the liquidation value of the CONs. Second, even if the Court concludes that there was no waiver and exercises its discretion to reach the forfeited issue, the courts below did not clearly err when they calculated damages without deducting the liquidation value of the CONs. Finally, even if the Court determines that there was clear error, it should reduce the damages awards by no more than $1.9 million.

A. **Tilton and the Patriarch Entities Both Waived and Forfeited Any Argument That the Damages Awards Should Be Offset by the Liquidation Value of the CONs.**

Tilton and the Patriarch entities waived any argument in this appeal that the damages awards should be offset by the liquidation values of the CONs. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (defining a waiver as "the intentional relinquishment or abandonment of a known right" (internal quotation marks omitted)). Whether a damages award is duplicative is a question of fact. *See Bartholomew v. Universe Tankships, Inc.*, 279 F.2d 911, 918 (2d Cir. 1960); *Reilly v. United States*, 863 F.2d 149, 166 (1st Cir. 1988); *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 580 (6th Cir. 1994); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1235 (10th Cir. 2000); *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1200 n.17 (11th Cir. 2009); *cf. Bessemer Tr. Co., N.A. v. Branin*, 618 F.3d 76, 85 (2d Cir. 2010). And in their reply brief, Tilton and the Patriarch entities asserted that they have "not asked this Court to reweigh the facts." Reply Br. 1. Indeed, they emphasized that "*every* issue raised on appeal—as to both liability and damages—turns on questions of law." *Id.* In the context of damages for the fraudulent conveyance, they also disclaimed any argument about a "double recovery" and "netted" damages; instead, they focused on the contention that the trustee may recover "*only* the property *or* its value … but not both." *Id.* at 24. Because Tilton and the Patriarch entities waived any challenge to the amount of the damages awards, that issue is not properly before this Court. *See Wood v. Milyard*, 566 U.S. 463, 471 n.5 (2012); *accord United States v. Williams*, 930 F.3d 44, 64 (2d Cir. 2019); *United States v. Jimenez*, 512 F.3d 1, 7 (1st Cir. 2007); *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146 n.7 (3d Cir. 2017).

Even if the Court concludes that Tilton and the Patriarch entities did not waive any challenge to the amounts of the damages awards, they still forfeited the issue three times over by failing to raise it in either the bankruptcy court or the district court or this Court. *See Olano*, 507 U.S. at 733 (defining forfeiture as "the failure to make the timely assertion of a right"); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Presidential Gardens Assocs. v. United States ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 141 (2d Cir. 1999). Indeed, even though the trustee himself argued before the bankruptcy court that the damages awards should be offset by the value of the Hudson Valley CON, *see* SA67 n.27, Tilton and the Patriarch entities never made any such argument in the proceedings below or in this Court, *see* Appellee's Br. 58. Nor, as the bankruptcy court observed, did they even "offer their own analysis or suggest an alternative damage assessment." SA62. The only argument they made with respect to offsetting the damages awards related to whether the liquidation value should have been reduced by $800,000 as a result of the

# SIDLEY

Page 3

trustee's previous payment to Patriarch Partners Agency Services. SA139 n.132. That argument had nothing to do with the CONs or the value of Transcendence. And even that argument was itself forfeited because it was never raised in Tilton's objection memorandum of law or the Patriarch entities' appeal to the district court. *Id.*

Tilton and the Patriarch entities concede that they "did not expressly discuss the CONs in [their] damages arguments in the district court." Appellants' Suppl. Letter Br. 4. They nevertheless argue that they somehow preserved the issue, even if they "did not address the CONs in precisely the same terms as the post-argument Order." *Id.* at 5. But none of their citations has anything to do with whether the damages awards should be offset by the liquidation value of the CONs. For example, whether the CONs should have factored into the fair-price analysis goes to Tilton's liability for breaching her fiduciary duties, which is an entirely separate issue from whether the CONs were double-counted in the damages awards. *See id.* at 4. The contention that Transcendence was never a going concern broadly pertains to both liability and damages, but it does not address the question of whether the damages awards should have been offset by the liquidation value of the CONs. *See id.* And Tilton's argument about section 550(a) of the Bankruptcy Code—that the word "or" is exclusive, meaning that the trustee is not permitted to recover a combination of the property and its lost value—has nothing to do with double-counting the CONs. *See id.* at 4–5. Regardless, the section 550(a) argument was itself forfeited because Tilton and the Patriarch entities did not properly raise it in their opening brief. *Compare* Appellants' Br. 52 (arguing that section 550(a) does not permit a trustee to receive a "double recovery" or a "windfall") *with* Reply Br. 24 (making a statutory argument that the word "or" is exclusive). And even if the argument were not forfeited, it is plainly meritless. *See* 11 U.S.C. § 102(5) ("In this title … 'or' is not exclusive[.]"); *In re Zohar III, Corp.*, 631 B.R. 133, 185 (Bankr. D. Del. 2021); *D.A.N. Joint Venture III, L.P. v. Touris*, 597 B.R. 411, 417 (N.D. Ill. 2019); *In re Am. Way Serv. Corp.*, 229 B.R. 496, 531–32 (Bankr. S.D. Fla. 1999); *see also* Oral Arg. 15:38–15:48 (acknowledging that a trustee could recover property and compensation for diminution in value of the property).

To be sure, the forfeiture rules are prudential, not jurisdictional; therefore, a court may exercise its discretion to consider a forfeited issue. *Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021). But a court generally will exercise that discretion only where either "the issue is purely legal and there is no need for additional fact-finding" or "consideration of the issue is necessary to avoid manifest injustice." *Patterson v. Balsamico*, 440 F.3d 104, 112 (2d Cir. 2006) (internal quotation marks omitted). By contrast, a court will "decline to reach" an issue when "there is no justification for the failure to pursue it" earlier. *Id.* at 113. These rules of judicial restraint accord with the broader principle that courts "are essentially passive instruments of government" that "normally decide only questions presented by the parties." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (internal quotation marks omitted).

Here, there is no reason to disregard the Court's default rules on forfeiture. Whether the damages awards that were adopted from the expert's model double-counted the value of the CONs

# SIDLEY

Page 4

is a question of fact; it is not the type of "purely legal" issue that the Court will usually exercise its discretion to reach. *Trump Corp.*, 6 F.4th at 410. Moreover, whether to deduct $1.9 million from damages awards of $38.2 million and $39.2 million—not including prejudgment interest— does not present a risk of "manifest injustice" by any stretch of the term, notwithstanding Tilton and the Patriarch entities' conclusory assertion to the contrary. Appellants' Suppl. Letter Br. 5. Finally, Tilton and the Patriarch entities have no excuse for failing to raise the issue of deducting the liquidation value of the CON earlier in the case, particularly when the trustee himself made the exact same argument to the bankruptcy court. SA67 n.27.

B.  **The Courts Below Did Not Commit Clear Error by Not Deducting the Liquidation Value of the CONs from the Damages Awards.**

Even if the Court concludes that there was no waiver and exercises its discretion to reach the forfeited issue, the standard of review is clear error. *See Bessemer Trust*, 618 F.3d at 85; *Reilly*, 863 F.2d at 166; *Black*, 15 F.3d at 580; *United Phosphorus*, 205 F.3d at 1235; *St. Luke's*, 573 F.3d at 1200 n.17. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

It was not clear error for the courts below not to deduct the value of the CONs from the damages awards. The bankruptcy court was fully aware that the CONs were needed to operate the ambulances and that the subject collateral did not include the CONs. SA30 n.15; JA789(25:4–5); JA824(8:7–10). It nevertheless found that the subject collateral had significant value, despite the absence of the CONs. SA55–71; SA76–79. In other words, the court found that a willing third-party buyer would still pay going-concern value for the subject collateral even though she would still need to acquire the CONs. That finding makes sense—after all, Tilton herself did not assign any value to the CONs when calculating the purchase price of the subject collateral. SA53; JA787– 88(23:12–24:9). Because the finding is plausible, it cannot be clearly erroneous. *See Anderson*, 470 U.S. at 574. At the very least, the lower courts' explanations of how they calculated damages do not leave one with "the definite and firm conviction that a mistake [was] committed." *U.S. Gypsum Co.*, 333 U.S. at 395.

C.  **If the Court Determines That a Modification of the Damages Awards Is Necessary, It Should Deduct No More than $1.9 Million.**

Even if the Court concludes that there was no waiver, exercises its discretion to reach the forfeited issue, and concludes that not deducting the liquidation value of the CONs from the damages awards was clear error, it should reduce the damages awards by no more than $1.9 million—*i.e.*, the liquidation value of the Hudson Valley CON. SA53; JA1976. Although Tilton foreclosed on the stock of TC Ambulance Corp., and although that division required a CON to

# SIDLEY

Page 5

operate, Tilton did not include TC Ambulance Corp. in her projections for Transcendence. JA1969. Accordingly, because the trustee's damages expert calculated damages by projecting a range of operating values for TransCare and Transcendence based on Tilton's own forecasts, he also did not include TC Ambulance Corp. in his projections for Transcendence. This means that there could not have been a double-counting of the TC Ambulance Corp. CON because neither TC Ambulance Corp. itself nor its CON were counted in the projections for Transcendence's operating value and the Transcendence damages in the first place. Moreover, throughout the proceedings below and in this Court, Tilton and the Patriarch entities have never objected to the trustee's proposal to include only the $1.9 million Hudson Valley CON but not the $1.3 million TC Ambulance Corp. CON in the liquidation value of Transcendence. *See* Appellee's Br. 58; SA139 n.132.

Finally, the Court should reject Tilton and the Patriarch entities' bald-faced attempt to use this supplemental briefing on a narrow question involving damages to rehash other liability and damages issues that are both outside the scope of the Court's post-argument order and that have already been fully briefed and argued. Even if the Court does consider these other issues, however, Tilton and the Patriarch entities' arguments lack merit. For example, Tilton and the Patriarch entities contend that they should avoid liability because they failed to foreclose on the CONs and, as a result, Transcendence was never a going concern. *See* Appellant's Suppl. Letter Br. 2. But whether Tilton essentially forgot to transfer title to the CONs themselves in the course of her poorly executed plan is irrelevant; what matters instead is the going-concern value of Transcendence to a third-party in a fair sales process at the time of the transaction on February 24th. *See* Appellee's Br. 59; SA56; SA132. In any event, everyone involved in the foreclosure assumed at the time that the CONs *had* been transferred and Tilton "believed that by foreclosing on the stock of [Hudson Valley Ambulance and TC Ambulance Corp], Transcendence would be able to use their CONs." SA30 n.15; *see* JA787–88(23:12–24:9). Only years later, during the litigation at the bankruptcy court, did Tilton and the Patriarch entities "concede[] that none of the CONs were included in the Subject Collateral." SA30 n.15. There is no evidence in the record that the collapse of Transcendence was caused by a dispute over the ownership of the CONs. The fault instead lies in Tilton's ill-conceived plan, as well as her reckless decision to cancel the contract with the MTA. Tilton and the Patriarch entities also continue to blame the collapse of Transcendence on the trustee. *See* Appellant's Suppl. Letter Br. 2. But pinning the fault on the trustee contradicts the assertion that Transcendence was doomed from the start. It is also belied by the record, which shows that the trustee acted reasonably at all times. *See* Appellee's Br. 65–66.

For these reasons, the judgments below should be affirmed.

Very truly yours,

*/s/ Carter G. Phillips*

Carter G. Phillips

cc: Counsel of Record (via ECF)